UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 13 B 6973 |
| STEPHEN J. JENNINGS, | ) | |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |
| | ) | |
| MARILYN O. MARSHALL, Standing Chapter 13 Trustee, | ) | Adv. No. 14 A 476 |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Pamela S. Hollis |
| ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Standing Chapter 13 Trustee Marilyn O. Marshall brought the underlying complaint against Illinois Department of Healthcare and Family Services ("IDHFS") to recover funds erroneously distributed to IDHFS pursuant to Stephen Jennings' confirmed Chapter 13 plan. The Trustee asserts that the funds must be returned to her for disbursement to creditors. IDHFS acknowledges that it received the payments, but argues in this motion for summary judgment that it cannot be compelled to repay the money and that the Trustee must be responsible for her own error. Having reviewed the papers filed, the court grants the motion for summary judgment and will enter judgment in favor of IDHFS.

## FINDINGS OF FACT

The parties agree that the facts are not in dispute. The findings of fact listed below are taken directly from IDHFS' Statement Pursuant to Local Bankruptcy Rule 7056-1 or from the docket.

1. On February 24, 2013, Debtor filed a Chapter 13 Voluntary Petition, which listed as an unsecured priority debt $25,532.15 owed to IDHFS as a domestic support obligation.

2. Prior to the filing of the Petition, on December 4, 2000, the Circuit Court of Cook County entered a domestic child support obligation in the matter of Monique Wallace v. Stephen Jennings, 99 D 52363, which found that Debtor Jennings owed $18,193.04 in back child support, and required him to pay to the custodial parent $108.00 every other week in current child support as well as $20.00 toward the arrearage.

3. On August 2, 2013, IDHFS filed a Proof of Claim in this case on behalf of the custodial parent Wallace for $26,010.35 in unpaid child support, all of which was owed directly to her.

4. Between October, 2013, and February, 2014, after the filing of the Proof of Claim, the Trustee disbursed $3,264.69 in five installments to IDHFS in this case.

5. IDHFS fulfilled its duty as the State's child support enforcement agency and distributed these funds, upon receipt of the five disbursements, to the custodial parent Wallace.

6. IDHFS does not have the manpower to determine if the Trustee is correctly disbursing funds pursuant to a Chapter 13 Plan.

7. The Trustee subsequently determined that it made this distribution to IDHFS in error.

8. The underlying bankruptcy case was dismissed on May 21, 2014.

9. On July 17, 2014, the Trustee filed the instant adversary action against IDHFS.

2

## CONCLUSIONS OF LAW

The standard for a summary judgment motion is set forth in Fed. R. Civ. P. 56, made applicable in bankruptcy proceedings via Fed. R. Bankr. P. 7056. Summary judgment is appropriate under Rule 56 if the moving party shows that no genuine issue of material fact exists and that it is entitled to prevail in the case as a matter of law. In ruling on the motion, the court must draw all reasonable inferences from the underlying facts in the responding party's favor. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Parkins v. Civil Constructors of Illinois, Inc., 163 F. 3rd 1027, 1032 (7th Cir. 1998). A factual dispute is a genuine issue for trial only if it is determinative of the outcome under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There are no facts in dispute in this matter.

This complaint boils down to the question of which party should pay for the Trustee's error in distributing funds to IDHFS. The Trustee describes in her response just how the erroneous distribution occurred.[1] Wells Fargo, N.A. filed two separate secured claims in Debtor's bankruptcy case. When it obtained relief from stay as to the first claim, based on a mortgage, the Trustee stopped making distributions on that claim. She also stopped making distributions to Wells Fargo on its second claim, which was secured by a vehicle. This was a mistake. The Trustee discovered the error within four months and promptly notified IDHFS and sought reimbursement.

The Trustee argues that "IDHFS admits that it did not determine if the disbursements it received from the Trustee were made pursuant to the confirmed plan prior to turning the funds over the custodial parent." Response at 2. This is a curious argument. The Trustee provides no insight as to how IDHFS should have determined whether the disbursements were made pursuant

---

[1] The court is not making a finding that the following are undisputed facts, but since this version of the facts shows the Trustee making only a mechanical or clerical error, it does not affect the court's ruling.

to the plan. IDHFS received notice of the bankruptcy case and it filed a proof of claim to which no objection was made. Shortly thereafter, it began receiving distributions from the Trustee. What more could possibly be required of a creditor? Is IDHFS – or any creditor – supposed to contact the Trustee and ask whether she truly believes it is entitled to this distribution? Surely the Trustee does not want each of the thousands of creditors who receive distributions each month to contact her office and ask whether it may cash the check.

Although some courts have held that "[t]he Chapter 13 trustee's power to recover overpayment is inherent in the overall scheme of a trustee's fiduciary duties as a necessary means to ensure that the trustee's payment system functions smoothly," they did so because "it was solely the <u>creditor</u> who was at fault for soliciting or accepting overpayments from the debtor or the Chapter 13 trustee." <u>In re DiRuzzo</u>, 513 B.R. 422, 429 (Bankr. D.R.I. July 24, 2014) (emphasis in original).

Tellingly, the Chapter 13 Trustee cites no case law in support of her argument that IDHFS must return the improperly distributed funds. Meanwhile, IDHFS cites several cases for the proposition that a Chapter 13 Trustee is liable for any improper distribution. <u>Nash v. Kester</u>, 765 F. 2nd 1410, 1415 (9th Cir. 1985) (Trustee admitted receiving notice of dismissal of bankruptcy case prior to distributing funds); <u>In re Morgan</u>, 353 B.R. 599, 605 (E.D. Ark. 2006) (Chapter 13 Trustee willfully violated her fiduciary duties and was held liable for such improper distribution); <u>In re Randolph</u>, 2001 WL 1223139, *11-12 (Bankr. N.D. Ind. Sept. 20, 2001) ("[U]nder the bankruptcy case law chapter 13 trustees have been given the power to recover overpayments made to creditors in some situations. . . . [But a] trustee is accountable for all the property he receives and may be liable for improper distribution of funds."). IDHFS also cites a very recent case that split the difference where both the Chapter 13 Trustee and the creditor were

4

at fault. DiRuzzo, 513 B.R. 422. Since there is no evidence that IDHFS was at fault, it argues that the Trustee should be solely responsible for her overpayment.[2]

The Trustee distinguishes Randolph and DiRuzzo, but cites no precedent of her own except two cases describing the mechanics of Chapter 13 plans and one holding that "ordinary negligence is the standard for assessing whether a breach of duty by a bankruptcy trustee is actionable." No one is seeking to bring a cause of action against the Trustee. She is the plaintiff.

The Trustee also argues that she should not be held liable for her mistake because there are no allegations that she did not keep proper records or exercise reasonable due diligence. It is true there are no such allegations. The simple fact is that a mistake was made, and the court must decide who pays for it. Between the two parties, IDHFS is the more innocent. The Trustee may not have acted maliciously, but funds were improperly distributed because of her error. Unfortunately, she must pay the price for this mistake. See also In re Estrada, 322 B.R. 149, 151 (Bankr. E.D. Cal. 2005) ("If the trustee cannot recover the overpayment, he may have to dig into his own pocket and make good the misdirected plan dividend.").

> Given the volume of cases that most Chapter 13 trustees have and the thousands of disbursements they make, an occasional improper disbursement may occur through clerical error or administrative oversight. For example, the trustee may pay too much on a claim, pay a claim that has been disallowed, or disburse funds in the wrong priority order. An erroneous distribution may also occur if the trustee receives funds and applies them to the account of the wrong debtor. The trustee has the power and responsibility to recover an erroneous payment, if she acts in a timely manner such that the creditor's detrimental reliance on receipt of the payment does not preclude its recovery. In the final analysis, however, the general rule is that a trustee is personally liable for an erroneous payment.
>
> Chapter 13 Practice & Procedure § 14:6 (footnotes omitted) (2014).

---

[2] IDHFS also argues that as a "court of equity," it would be "anomalous" to make an otherwise innocent creditor pay for the Trustee's mistake. Unfortunately for IDHFS, the Seventh Circuit's more recent jurisprudence discourages bankruptcy courts from relying on their genesis as courts of equity when deciding questions of law. Compare Matter of Hallahan, 936 F. 3rd 1496 (7th Cir. 1991) with Sunbeam Products, Inc. v. Chicago American Mfg., LLC, 686 F. 3rd 372, 375-76 (7th Cir), cert. denied, 133 S. Ct. 790 (2012).

The court will follow this general rule, although it notes that this is a unique set of circumstances and the same result may not obtain with an ordinary unsecured creditor. IDHFS received the distributions in good faith and immediately turned the funds over to the custodial parent in whose shoes it was standing. Following this general rule also comports with the public policy of providing children with monetary support from both of his or her parents, see 750 ILCS 45/1.1 (West 2014) ("Illinois recognizes the right of every child to the . . . monetary support of his or her parents under this Act"), as well as the "bankruptcy policy of preserving the integrity of support obligations." In re Sanks, 265 B.R. 566, 569 (Bankr. N.D. Ohio 2001). See also Matter of Crosswhite, 148 F. 3rd 879 (7th Cir. 1998) (In the context of a dischargeability action under a now-deleted provision, stating that "[b]ankruptcy law has had a longstanding corresponding policy of protecting a debtor's spouse and children when the debtor's support is required.").[3]

For all of the reasons stated above, **IT IS HEREBY ORDERED THAT** the motion for summary judgment is **GRANTED**. Judgment shall be entered for Defendant IDHFS.

ENTERED:

Date: SEP 2 4 2014

PAMELA S. HOLLIS
U.S. Bankruptcy Judge

---

[3] Although the Chapter 13 Trustee alleges in her complaint that the funds distributed to IDHFS "constitute property of the estate and must be disbursed to creditors by the Trustee pursuant to the plan," Complaint at ¶ 12, it is not within the Trustee's power to disburse those funds to creditors even if they were returned. The underlying bankruptcy case was dismissed four months ago. As this court wrote last year, "none of the provisions of § 1326 provide any direction to the trustee when a case is dismissed post-confirmation." Williams v. Marshall, 488 B.R. 380, 386 (Bankr. N.D. Ill. 2013). Pursuant to § 349(b)(3), however, "the funds held by the Chapter 13 trustee must be returned to the debtors who made the payments under their plan." Id. Even if she were able to recover the distributions from IDHFS, the Trustee would have to return the funds to the debtor. Such a result is anathema to the public policy described above.

6